Thank you, Judge Smith. May it please the Court, my name is Mark Caldwell. I'm representing Mr. Castillo this morning in his District Disability case. Pleasure to have you here, Mr. Coleman. Thank you, sir. I'm going to try to reserve the intertwined. The first is the in-face rejection of the opinion of the jury psychiatrist at the Veterans Administration, Dr. Hobson, and the ANJ's finding that Mr. Castillo did not have any severe impairments in the mental realm, which is a very broad threshold. I'm here to show a more than unanimous impairment in that regard. The reason I say those two issues are intertwined is if one accepts Dr. Hobson's assessment, which had quite a few archaic limitations, which are defined at the So, I think you stole one of my questions, and I'm thankful you did. It seems to me that your second issue here rises and falls on whether the assessment by Dr. Hobson was supported by substantial evidence. So, the ALJ said that he was rejecting Dr. Hobson's opinions because Dr. Hobson's 2012 assessment was contradicted by his 2010 and his 2011 opinions. Also, that Castillo's own statements and Dr. Pruitt's statements contradicted Hobson's opinions, right? The ALJ said, anchoring the lesser best argument about this, taking this in reverse order. I mean, to be fair, there are specific legitimate reasons, and now you're going to have to tell us why we should say that's not an option. Well, first of all, with all due respect, I'm going to disagree with the standard that this should apply. Specific legitimate reasons are reasons for a contradicted training position. I'm sorry. You are absolutely right on that. Go ahead. So, I, on the left, those of you, so my argument, just to be clear, is that I can clearly convince you reasons apply, and the reason for that is Dr. Hobson's opinions are contradicted by substantial evidence. The only evidence the ALJ relied upon was the new, non-examining state agency's decision. Nothing more. And that is not substantial evidence, and its substantial evidence does not contradict substantial evidence. Moving on. So, are we really parsing, that's why I backed off and said, okay, sorry, I didn't want to get into stating what the standard was. We're really parsing this based on the standard. If you lose on the standard question, have you lost the difference between specific legitimate reasons and the other standard? Absolutely. So, go ahead. I apologize because I didn't want to bear you with the burden of me saying what the standard was. I wanted to give you a chance to argue. Go forward. And, as I say, the only reason, standard, frankly, doesn't make a big difference here. If you look at specifically legitimate reasons, the ALJ gave two reasons. And one reason was improvements. The ALJ didn't tell us where. The ALJ didn't tell us why. The ASJ held it in December 2011, announced syndicated improvements, moving into an apartment, becoming active in the church, looking on the positive side of things in ER 32. You're right in front of me. I'm kind of later because there's a lot of duplication here. But that is correct. The ALJ did use the word improvement. But what did improvement mean? Mr. Caldwell, I just want to make clear. You're only claiming on this appeal that psychological impairments support your argument, are you not? That's correct, Judge. You're not arguing physical impairments? Not at all. Okay. And that's why when I started with Judge Smith's question, I started to do it backwards because Judge Smith mentioned Dr. Pruitt, and Dr. Pruitt is truly a physical. One time, I consulted an examiner, and the judge just blitzed verbatim, literally, what Dr. Pruitt had to say. And the only thing Dr. Pruitt had to say that's relevant here is that the claimant was able to engage in some activities of daily life, which of course is uncontradicted. He can dress himself, he eats, he does some housework. In this court setting, Redick can fear that an individual does not need to be completely incapacitated. But by virtue of your argument on appeal, that you're hanging your argument on these psychological impairments, isn't that a more narrow area? I mean, does you have an even greater burden to share with that if your argument was on both psychological and physical? Well, certainly, there would be more there. In the Luster case, it says that this one psychological being that you're finding here, which I would suspect would be the case given the fact that it's shown as bone-on-bone for a generation of thieves, that the pain and the depression and the anxiety probably go together, but I'm still going to look at the depression and the anxiety. And what we are revealing here, and let me emphasize, not to belabor the obvious, is we're looking at the ALJ decision. And the ALJ decision just said improvement. And it tells what? It tells where. And then the ALJ mentioned reduced medication. The citation I have is 693, although it's probably a duplication. If we look at the actual medication, 695, the actual reduction in medication is gabapentin. And the endocrinopsis is right there. Gabapentin is for chronic pain, but the other two medications in continuum are fluoxetine, Prozac, and Triazidone. Those are the psychotropic medications, and those have nothing to do with the medication that was, in fact, reduced. So, here again, we have an ALJ playing doctor, and the ALJ is saying that a reduction in medication is enough, and the ALJ is wrong. Well, you know, that's your argument. And that might get you past step two. Step three. How does it get you past step four in terms of functional competency? Dr. Hobson gets me past step four. In my reply brief, I give you a side-by-side chart of what Dr. Hobson had to say and what the commissioner's criteria are. And by virtue of the commissioner's own criteria, Dr. Hobson's assessment meets those criteria. And that's why I urge the court to remit the benefits. And I see I have some time remaining. I reserve it. Goodbye. Thank you so much. Your Honor, this is just my camera on behalf of the commissioner. Mr. Castillo has alleged that he's been disabled since October of 2010. Yet, a few months after that, he actually worked as a pollster doing tasks that Dr. Hobson particularly couldn't do. For example, he interacted with the public. He spilled information that he gathered into reports. He was able to concentrate well enough to do that. And, in fact, Mr. Castillo said that he was doing a quote-unquote good job. That's in the record at page 188. Mr. Castillo admitted to Dr. Pruitt shortly after Dr. Hobson evaluated Mr. Castillo, that he had no problems performing activities skillingly. On this record, the ALJ reasonably found that Mr. Castillo did not have a severe mental impairment and provided valid reasons for discounting Dr. Hobson's opinion. Most significantly, the ALJ discounted Dr. Hobson's opinion because of his reading notes, including Dr. Hobson's own records. And let's see exactly what the ALJ said here, Mr. Castillo's argument, the ALJ didn't provide enough explanation here. This is what the ALJ said. That Mr. Castillo's reading notes, quote, show improvement in his mood and outlook and indicate that he has been able to reduce medication. That's on page 33. And when we look at the treatment notes from 2011, including Dr. Hobson's own treatment records just six months before he offered his opinion, this is exactly what these records show. For example, Dr. Hobson indicated that Mr. Castillo was making progress in his life, learning to look at the positive side of things. He feels that his anxiety is under control. If we look a little bit earlier in, for instance, what report was that sent? This is December 2011, on page 693 of the record. It carries over to page 634, where Dr. Hobson actually performs a medical status examination, which is section 809. I would also refer you to courts pages 289 and 427. Those are Dr. Hobson's notes as well. That's from June and September of 2011. As to my camera, it seems that the supplemental questionnaire, which was signed on July 2, 2012, is obviously a routine questionnaire that's used in the Social Security cases. It seems like you can make an argument. That's what Castillo is doing. It's much more specific. It's much more honed in to specific questions, versus the report from December 2011. I guess you could argue here that if there had been a report after July 2, 2012, that may have reflected more on what was said on July 2. Do you want to comment on that? How does this work? You handle these cases all the time. We don't see it that frequently. Sure, Your Honor. Your Honor, that is a good point. If there were support reports after 2012 from Dr. Hobson, we might be in a different situation. But we don't have that here. What we do have is a scenario very similar to the Thomas City decision from the late surgeon, which is what the court said there. There are, as Your Honor pointed out, specific checkboxes or circles that Dr. Hobson filled out. The court said this in Thomas City, that the incongruity between the doctors' questionnaire responses, like we have here, and your medical records, provides an additional specific and legitimate reason for rejecting that opinion. And, Your Honor, to me, I understand that opinion works through inconsistency. But my problem is, and I don't know if you would, but I would just ask you to explain the inconsistency here, because it has never seemed to me that there is an inconsistency between the doctors concluding that the patient is incapacitated and his prior notes that the claimant was taking the medication and appeared to be responding. I mean, that's supposed to be what the patient is doing. It's supposed to be what the patient is doing, but that doesn't necessarily mean that the patient is incapacitated. So would you explain the true inconsistency here? Absolutely. So in Dr. Hobson's 2012 questionnaire, essentially this is what Dr. Hobson essentially assigned, for example, moderate and moderate denotations in Mr. Jacobson's abilities to perform tasks, such as simple tasks and complex tasks, and assigned limitations to that. If we look at what the medical records show, his thought process, for example, on page 694, this is one of Dr. Hobson's notes, thought processes were all normal, memory was intact, good attention and concentration. There's other similar findings on pages 288, 289, and 90. Intact memory, for example, 427, fair attention and concentration, good insight and judgment. These are, to address your earlier point, while we don't have a medical record that says, at least based on my review, that I didn't locate a medical record that actually says this person from Dr. Hobson, this individual, can actually carry out complex tasks. When we look at what the actual findings are, it was a reasonable finding for the agency to look at these medical records and say, there is a discrepancy here, there is an inconsistency, and it's not just Dr. Hobson's reports. For example, in October of 2011, this is on page 719, Mr. Cascio reported that he's doing fair, he has continued to make improvements. Again, you know, August 2011, his mood and effect were normal, his memory was intact. So, in other words, these are all findings when we take this record on a whole that scanned Dr. Hobson with what Dr. Hobson said that Mr. Cascio was able to do. Well, I thought that part of Hobson's evaluation was that he just can't get along with other kids, he had to be around other people. And I'm not quite sure I see these improvements that were noted earlier as being inconsistent with that. Well, you're correct, Your Honor. There is a series of questions that Dr. Hobson answered about Mr. Cascio having more affiliations, interacting with other people. But I would try to discord to the analogy as often defined in this case, which is that Mr. Cascio can, in fact, engage in his past relevant work as a pollster. Mr. Cascio was actually working as a pollster. Is Mr. Cascio supposed to be talking on the phone? For example, the record on pages 188, 181, as well as 188, he spells out what he was doing as a pollster after he was disabled, and it involved calling people, collecting information, gathering data. He said that he was doing a quote-unquote good job. He, as he's often defined in this case, is an except for that he was able to do his past relevant work so that that fight necessarily precludes what Dr. Hobson is saying here. And I would also refer the court to what Mr. Castillo even told Dr. Pruitt, which, as Your Honor pointed out, it was a physical examination. But there are findings and reports that are relevant. Dr. Pruitt observed that he was a pleasant individual, that he was able to perform three enforcement commands, which, again, is at odds with what Dr. Hobson stated. Oh. What is the importance that Castillo had a GAF of 57? With respect to the GAF of 57? 57. I mean, the problem is I don't know how far to go into this because it doesn't seem like Castillo is even challenging that the EALJ should have relied on that score. But nonetheless, in reading that score of 57, that's moderate symptoms, right? Correct. So I'm having a tough time on how that goes with your arguments. Well, as Your Honor pointed out, Mr. Castillo, because we raised this issue with you, I think he did raise it at the district court, and the district court actually addresses it in line with what the Ninth Circuit has said about GAF scores. It's not binding. It's not binding. It's of limited relevance. In fact, I don't have the case to cite you, but I know that there is at least one non-custodial Ninth Circuit case that's applied this new context where the EALJ has not mentioned GAF scores and said that this is harmless. The EALJ actually declared ESM manual does not even rely on GAF scores anymore. So because it is such a rough translation, and given the record in this case that demonstrates students' usability to perform activities normally as Luxembourgians, I would argue that there really is very limited relevance in this case. So I want to go back now to your comments on Dr. Pruitt's, if you will, opinion. Given Dr. Pruitt's, if you will, background and given the things that Dr. Pruitt could establish, can one suggest that it's pretty contradictory to Dr. Hobson's opinion? It is. With Dr. Pruitt, you're correct. Dr. Pruitt really sort of looked at the physical limitations and you're absolutely correct. But it is contradictory to the extent that what Mr. Gustew told Dr. Pruitt. If we look on page 820 in Dr. Pruitt's report, this is what he told, this is what Mr. Gustew said to Dr. Pruitt. Claimants able to perform all activities of daily living requiring no assistance in daily activities, no significant limitations. If we turn to page 821, Dr. Pruitt said, Claimant is able to follow three and four set of commands without significant confusion or delay. So while this is not a he can perform a full mental SAS examination, you're absolutely correct. There are findings in this report that are inconsistent and it's not the only inconsistency. It underscores the ALJ's decision here that Mr. Gustew actually was not severely impaired with respect to his mental condition. All right, I've taken you over. Thank you very much for your argument. Thank you. We'll give Mr. Caldwell a minute. Two more minutes. He's running by an extra minute. I didn't take half of it. He gets extra time. I get extra time. He only got extra time because I made him take it. Okay. I'm briefed. Schroeder is running. Claimant's achievement records don't translate into work capacities, but let's be a little more specific. Here's what Dr. Hobson had to say on this report that's being relied upon. Problem. Depression. Not otherwise specified. Anxiety disorder. A stands for assessment. Anthedonia, meaning lack of pleasure in regular activities. Energy, meaning lack of energy. Poor concentration. Poor motivation. Irritability. Continue pros at, continues flaws obtained daily for note. But what is your response to the Arranger Series pointing out that he said that he could make all these phone calls and he was doing well? Well, the ALJ said that the claimant has not performed any substantial games of activity. And since this court reviews the ALJ's decision, he has written that issue is a dead issue. The fact that a claimant could perform some activities, and remember the state agency said that he couldn't continue those activities because of his continuing disabled condition, that's a state agency statement, that that becomes a non-issue. So if we look at the record as actually written, if we look at the ALJ as actually written, then the ALJ reasons for discounting Dr. Hobson's opinion fall apart, and as Judge Smith's mentioned at the beginning of this discussion, if the claimant prevails on that issue, the claimant prevails over this type of issue, then I would go further and ask for remand for remand of benefits. So now I've taken 42 seconds to get the ALJ to enter. All right. In this case, when we spin it.
judges: Fisher, Schroeder, N.R. Smith